NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240992-U

NO. 4-24-0992

IN THE APPELLATE COURT

FILED
June 26, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Ogle County |
| CHRISTIAAN DIOR DAVIS, | ) | No. 22CF208 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John Benjamin Roe IV, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Presiding Justice Harris and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant is unable to establish prejudice on his ineffective assistance of counsel claim, and he was not denied due process.

¶ 2    In this direct appeal, defendant Christiaan Dior Davis appeals his conviction of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2022)). He argues that (1) he received ineffective assistance from posttrial counsel where he filed a postconviction petition instead of a posttrial motion and (2) the trial court violated his right to due process when it granted the State's motion to strike his *pro se* posttrial motions. For the reasons that follow, we affirm.

¶ 3                          I. BACKGROUND

¶ 4    In September 2022, defendant was charged with three counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2022)). During pretrial proceedings, defendant vacillated between being represented by the public defender and proceeding *pro se*. He eventually proceeded

to a bench trial *pro se*.

¶ 5        At trial, the State dismissed one of the three domestic battery counts, and the trial court ultimately found defendant guilty of one count and not guilty of the remaining count. Defendant immediately filed a posttrial motion seeking a new trial or acquittal that was subsequently twice supplemented with additional claims. He raised claims of error relating to rulings on pretrial motions; evidentiary rulings; the sufficiency of the evidence; the effectiveness of his counsel due to the lack of a requisite affidavit for a pretrial motion to change the place of trial; and a claim that the domestic battery statute was unconstitutional as applied to him.

¶ 6        Defendant asked that appointed counsel represent him during posttrial proceedings, and the trial court reappointed the public defender's office. Newly appointed counsel filed a pleading titled "SECOND AMENDED PETITION FOR POST-CONVICTION RELIEF." The alleged postconviction petition explicitly cited the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) and stated that "[n]o direct appeal was taken from the judgement and sentence of the Circuit Court." Further, the petition incorporated "all allegations contained in the previously filed *pro se* Petitions as if fully set forth herein." Additionally, the petition argued that the court erred in allowing defendant to proceed *pro se* and denying him standby counsel. It also asserted the following claims:

"C. The Court erred in Denying the Defendant's Motion Pursuant to Illinois Rules of Evidence 404 (a)(2); and then requesting the State to notify a police officer on Defendant's behalf; and then changing said ruling on the date of trial allowing some evidence of self defense;

D. The Court erred in denying the Defendant's motion to admit *Gosset-Lynch* (character) evidence in regard to his defense of self defense;

E. The Court as a trier of fact erred in finding there was a dating relationship between the Defendant and the victim;

F. The State failed to prove the Defendant committed the offense of Domestic Battery beyond a reasonable doubt;

G. The State failed to disprove the Defendant's affirmative defense of self defense beyond a reasonable doubt, to the extent he was able to present[.]"

¶ 7 Counsel also filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) that provided the required averments regarding postconviction petitions, but also included the statement that counsel had "[c]onsulted with the attorneys who have previously represented the Defendant in this cause."

¶ 8 The matter proceeded to a hearing on the posttrial pleadings, at which defense counsel stated:

"[DEFENSE COUNSEL]: Thank you. Judge, just a bit of clarification to begin with. My amended petition adopts the allegations contained in the previously filed *pro se* petitions, but my argument will be emphasized generally on my petition. Some of that, there's some overlap in the petitions [defendant] filed and my petition and that, to that extent I'm adopting them."

¶ 9 Counsel continued his argument, focusing on the contentions that the trial court erred in allowing defendant to proceed *pro se* and in failing to appoint standby counsel. Specifically, counsel recounted moments from the trial when defendant was unable to use proper procedure to utilize available evidence and did not understand the difference between prior bad acts evidence and propensity evidence. Counsel also argued that a scrivener's error in a court order left defendant under the impression his theory of self-defense was not allowed at trial until

corrected by the State the morning of the trial. Counsel went on to argue the remaining contentions in the pleading labeled as a postconviction petition.

¶ 10 The State asked for clarification of which issues were being presented by defendant because, even though the pleading filed by counsel alleged to have adopted all the *pro se* arguments advanced by defendant, not all of those arguments were addressed. The State sought clarity to avoid waiving a response on the issues that were not orally argued. Defense counsel responded:

> "[DEFENSE COUNSEL]: That's a fair, absolutely fair question, Judge. To the extent my argument includes arguments and paragraphs made by [defendant] in his filings, we adopt those. To the extent, I did not address those, and I, for instance, the specific issue [the State] raises is Officer Gilliam's testimony which [defendant] has alleged throughout that it's perjurious, I didn't address, I don't intend to address and *it would be waived*. So the answer to her question is, if I didn't talk about it, *it's waived*." (Emphases added.)

¶ 11 Following arguments, the trial court took the matter under advisement to fully consider all the evidence. The court then issued a ruling from the bench at the next hearing, going through each issue presented and explaining the reasoning for denying defendant's request for relief. None of the reasons articulated related to the form of the pleading or the nature of the claims asserted. The court entered an order stating that the "Post Trial motions" were denied.

¶ 12 Defendant then filed a *pro se* motion to reconsider the denial of his posttrial motions and further requested the discharge of appointed counsel. Counsel filed a motion to withdraw, asserting that defendant had failed to cooperate in completing the presentencing investigation report and continued to file *pro se* posttrial motions. Defendant was allowed to

proceed *pro se* and was informed by the court that there were no other motions to rule on, and if he wanted to file a posttrial motion, he would have to do so.

¶ 13    Defendant filed a motion to reconsider his previously filed *pro se* posttrial motions that had been adopted in part by counsel, arguing that because there had been no disposition of his case (*i.e.*, no final judgment or sentence), he was not entitled to postconviction relief. He further argued that his appointed counsel infringed upon his first and fourteenth amendment rights when he asked defendant to " 'be quiet' " at the posttrial motion hearing. He argued his posttrial counsel was ineffective and also attempted to incorporate "all allegations contained in the previously filed [*pro se*] post-trial motions as if fully set forth herein." Additionally, defendant filed a petition for relief from judgment, citing the statutory section governing posttrial motions for a new trial (725 ILCS 5/116-1 (West 2022)), alleging prosecutorial misconduct, ineffective assistance of pretrial counsel, trial court error in denying "all of the defendant[']s motions," and a seeming sufficiency of the evidence claim posed as an as applied constitutional claim.

¶ 14    The State filed a motion to strike defendant's *pro se* posttrial motions, arguing that the adjudicated posttrial pleading labeled as a postconviction petition incorporated defendant's *pro se* posttrial motions' arguments that appointed counsel deemed legitimate, and, as a matter of trial strategy, chose to forgo those that were not. Further, pursuant to the rule against hybrid representation, entertaining the newly filed posttrial motions would allow defendant to relitigate issues that were already decided, and the court should strike them. In response to the motion to strike, defendant filed a "Notice of Claim of Unconstitutionality," contending that the statutory section he was found to have violated was unconstitutional as applied because he and the victim had never been in a "dating or engagement relationship" as defined by the statute, an argument that appears to be directed at the sufficiency of the evidence at trial.

¶ 15     At a hearing on the various motions, the trial court found that granting the State's motion to strike as to all the claims except those alleging ineffective assistance of counsel was proper because defendant was previously represented by counsel that argued a posttrial motion and allowing him to relitigate the matter would violate the prohibition on hybrid representation. The court then informed defendant that it was proceeding to a *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181 (1984)) to address the allegations of ineffective assistance of counsel. The court began explaining the process when the following exchange occurred.

"[THE DEFENDANT]: I understand, but I'm just thinking about, should I just waive this hearing all together and just proceed, that's what I was thinking about, I'm sorry.

* * *

THE COURT: When you say waive that, do you mean—

[THE DEFENDANT]: The *Krankel* hearing.

THE COURT: Okay. Do you mean that you want to withdraw that particular issue?

[THE DEFENDANT]: I've never presented that issue, that was the State's—

* * *

THE COURT: I'm trying to understand exactly how you want to proceed regarding an attorney and when you say waive the hearing, I'm not sure if you're, I would need to know exactly what you mean by that too.

[THE DEFENDANT]: The *Krankel* hearing, that's what you were just referring to, right?

- 6 -

THE COURT: I was, yes.

[THE DEFENDANT]: Okay, that's what I mean, I would just waive that and proceed.

THE COURT: But this is a process, this is a procedural process, if you are alleging ineffective counsel, that is, that's what the procedure is. So what you, if you're talking about waiving, that means that you would not want to address that ineffective counsel issue right now, that's the only thing you'd be waiving.

[THE DEFENDANT]: I have not addressed it.

THE COURT: But you wouldn't address it if you waived it.

[THE DEFENDANT]: I have not addressed that issue. My issue was I was not entitled to that hearing, November 15th."

¶ 16    After being assured that defendant was not advancing claims of ineffective assistance of counsel, the trial court found that defendant's as applied constitutional challenge was included in the pleadings stricken by granting the State's motion to strike. Defendant then filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2022)). He argued, among other things, that appointed posttrial counsel had filed an improper pleading and rendered ineffective assistance of counsel by filing a postconviction petition. At a subsequent hearing, the court addressed the petition for relief, and the State once again sought to strike the pleading, except any claims of ineffective assistance of counsel, on which defendant would be entitled to a *Krankel* hearing. The following exchange then took place:

"THE COURT: Well, I went over this last time with you in court of whether you were moving forward with any kind of an ineffective counsel claim.

[THE DEFENDANT]: I may have alleged it, but it wasn't—it wasn't the

- 7 -

gist of the relief.

THE COURT: Okay.

[THE DEFENDANT]: It was very—maybe out of the eight items, maybe half of one item was addressing the ineffective assistance ***. ***

THE COURT: Okay. Well, one thing I just want to know—because I have to know too—I need to know what you are wishing to move forward on. Obviously the State does too.

So what the State is saying in response to your petition that you have on file. I know there's a number of things that are addressed in there. But if they're stating that if you aren't moving forward with any kind of ineffective counsel claim, that they're going to be asking to strike the petition.

Is that fair to say? I want to make sure the record is right."

¶ 17    The State confirmed that it would move to strike the pleading except for the ineffective assistance of counsel claims and the trial court once again turned to defendant to assess whether he was pursuing claims of ineffective assistance of counsel.

"THE COURT: Okay. All right. However, you are not wishing to address ineffective counsel; is that right?

THE DEFENDANT: I have not."

¶ 18    The State filed a formal motion to dismiss, and defendant filed a pleading in opposition, where, among other things, he requested a *Krankel* hearing. At a status hearing, defendant confirmed he wished to proceed to a *Krankel* hearing and have counsel appointed.

¶ 19    At the preliminary *Krankel* hearing, the trial court informed defendant that it was going to evaluate defendant's claims before deciding whether to appoint counsel. The court then

requested that defendant elaborate on his claims. Defendant argued that posttrial counsel filed a postconviction petition pursuant to the Act for claims of a constitutional deprivation before there was a final judgment or disposition and therefore he was not entitled to postconviction relief and, in doing so, counsel hindered defendant's ability to perfect an appeal.

¶ 20 The trial court denied defendant's claim at the initial stage of the *Krankel* hearing, reasoning:

"I can consider what I observed as far as [posttrial counsel's] representation, the motion that he filed, and at that point in time, just to be clear, this is a separate issue, because of the particular motion, how it was filed and argued was properly argued here in court, there isn't anything I observed in the courtroom that I believe rose to the level of ineffective counsel *** in that motion hearing.

As to specifically strategy by an attorney, that determines, the attorney determines what motions are appropriately filed. The Court believes they were appropriately filed. The Court believes they were appropriately argued as far as the strategy of an attorney that makes those determinations after, obviously, conferring with the Defendant, but making those decisions on what the appropriate motions are.

I can look at that as, on its face, and again, what I'm determining at this point in time is whether counsel should be appointed and there should be a full investigation into [posttrial counsel's] effectiveness as an attorney. I don't believe that's appropriate at this time."

¶ 21 The trial court ultimately granted the State's motion to dismiss the petition for relief from judgment, and defendant was sentenced to two years in prison and four years of mandatory

supervised release.

¶ 22    This appeal followed.

¶ 23                              II. ANALYSIS

¶ 24    On appeal, defendant argues that posttrial counsel provided him with ineffective assistance where he filed a postconviction petition prior to the entry of a conviction and waived arguments contained in defendant's *pro se* posttrial motions after specifically reserving them in the petition. He also argues that the trial court violated his right to due process when the court granted the State's motion to strike his various posttrial motions following the discharge of appointed posttrial counsel.

¶ 25    The State argues that defendant waived his contentions regarding ineffective assistance of counsel via invited error when he explicitly waived a *Krankel* hearing in the court below. Even if not waived, on the merits, defendant was not prejudiced because the trial court construed the postconviction petition as a posttrial motion and issued a ruling on the merits. Because defendant's posttrial claims as advanced by appointed counsel were heard by the court, the State argues, there was no violation of defendant's due process rights.

¶ 26                         A. Assistance of Counsel

¶ 27    First, we must address the State's claim that defendant has waived the ineffective assistance of counsel claim that he raises on appeal. The State argues that when defendant specifically asserted claims of ineffective assistance of counsel in his *pro se* posttrial motions but then orally disavowed those claims and waived a *Krankel* hearing, he injected error into the proceedings and it would be manifestly unfair to allow defendant to relitigate the posttrial portion of the proceedings. See *People v. Wanke*, 2022 IL App (2d) 210136-U, ¶ 36 (finding the defendant forfeited ineffective assistance of counsel claims via collateral challenge that he was aware of

during the initial *Krankel* hearing and were of record but were not asserted). Defendant contends that he did not waive the *Krankel* hearing, but rather, there was a miscommunication with the trial court.

¶ 28    We find the amount of effort exerted by the parties on this point puzzling. Although defendant refused to partake in a *Krankel* hearing on two separate occasions despite the proceeding being offered by the court, he ultimately received a preliminary inquiry into his claim of ineffective assistance of counsel now raised on appeal, and the court found that it did not merit the appointment of counsel and advancement to an evidentiary hearing. Defendant's appellate counsel presents no arguments regarding the propriety of this hearing or ruling and instead argues anew that posttrial counsel was ineffective. Accordingly, the claim of ineffective assistance of counsel is not waived. See *People v. Moore*, 207 Ill. 2d 68, 81-82 (2003) (finding that if the trial court denies contentions of ineffective assistance at the preliminary inquiry, the defendant may still appeal his assertion of ineffective assistance).

¶ 29    Turning to the merits, defendant argues that counsel's performance entirely failed to subject the State's case to meaningful adversarial testing pursuant to *United States v. Cronic*, 466 U.S. 648 (1984), and therefore prejudice, as to him, is presumed. Alternatively, he argues his claim should succeed under the traditional analysis of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). The *Cronic* exception to the traditional *Strickland* analysis is " 'narrow' " and " 'infrequently' " applies. *People v. Cherry*, 2016 IL 118728, ¶ 26 (quoting *Florida v. Nixon*, 543 U.S. 175, 190 (2004)). The court in *Cherry* noted how rarely the exception had been invoked, finding back in 2014 that "in the more than 30 years since *Cronic* was decided, this court has found *per se* ineffectiveness under the second *Cronic* exception only twice." *Id.* ¶ 27. For the exception to apply, counsel must completely fail to subject the State's

case to adversarial testing, resulting in nonrepresentation, as a challenge to any portion of the prosecution by counsel requires analysis of the claim under *Strickland*. *Id.* ¶ 26. As is discussed below, counsel in this case advanced several arguments against the prosecution at the posttrial stage and articulated those arguments at the hearing on the posttrial motions. Accordingly, we determine that counsel's representation in this matter does not fall into the category of "no representation at all" and review the matter under the framework of *Strickland*. (Internal quotation marks omitted.) *Id.* ¶ 29.

¶ 30 "The United States and Illinois Constitutions guarantee criminal defendants the right to the effective assistance of counsel." *People v. Lewis*, 2022 IL 126705, ¶ 44 (citing U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Strickland*, 466 U.S. at 685-86; *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984)). The familiar two-part test established in *Strickland*, and adopted by Illinois (see *Albanese*, 104 Ill. 2d at 525-26) requires a defendant to show that defense counsel's assistance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *People v. Johnson*, 2021 IL 126291, ¶ 52. A defendant must establish both prongs of the *Strickland* test, and a reviewing court's finding that either prong cannot be established obviates review of the remaining prong. See *People v. Pingelton*, 2022 IL 127680, ¶ 63 (finding performance was not deficient); *People v. Haynes*, 192 Ill. 2d 437, 474 (2000) (finding no prejudice).

¶ 31 In this matter, we find that filing a postconviction petition in a posttrial context prior to a conviction or sentence was not well founded. Nonetheless, we also find that defendant's argument that he received ineffective assistance of counsel merely because posttrial counsel filed a pleading mislabeled as a postconviction petition fails because he cannot establish prejudice.

¶ 32        Both parties agree that "[g]enerally, the character of a motion is determined by its content or substance, not by the label placed on it by the movant." *People v. Patrick*, 2011 IL 111666, ¶ 34. We acknowledge that in this matter, not only the title, but also the statutory citation and the prayer for relief reference the Act and ask that defendant's nonexistent conviction be vacated and he receive a new trial. Without citation to legal authority, defendant argues that it was legally impossible for the trial court to grant the relief requested in the postconviction petition or characterize the pleading as a posttrial motion.

¶ 33        Here, the pleading clearly asked for, among other things, a new trial, which was relief that was within the trial court's ability to grant. See *People v. Harper*, 347 Ill. App. 3d 499, 502 (2004) ("A trial court has discretion to grant a new trial until the time of sentencing."). In fact, a new trial was the only thing the court could grant of the relief requested. See *Patrick*, 2011 IL 111666, ¶ 34 ("We must examine the relief sought to determine a motion's character."). Moreover, we are unable to locate authority that would prevent the trial court from characterizing the pleading as a posttrial motion. To the contrary, there are numerous instances of courts characterizing pleadings as another motion despite their heading and citation to different statutory sections. See *e.g.*, *People v. Cook*, 2019 IL App (1st) 161428, ¶ 9 ("It is well settled that the circuit court can recharacterize a *pro se* pleading alleging a deprivation of rights cognizable in a postconviction proceeding but not labeled a postconviction petition, even one clearly labeled as something else.").

¶ 34        Despite a specific provision in the Act that advises courts that they are under no obligation to do so, courts with some regularity recharacterize section 2-1401 motions as postconviction petitions. See 725 ILCS 5/122-1(d) (West 2022) ("A trial court that has received a petition complaining of a conviction or sentence that fails to specify in the petition or its heading that it is filed under this Section need not evaluate the petition to determine whether it could

- 13 -

otherwise have stated some grounds for relief under this [Act].""). We have also been unable to locate authority that establishes the power of the court to characterize pleadings is a one-way street that starts with a *pro se* motion and ends with a postconviction petition. We do not agree with such a narrow view of a court's inherent authority to characterize the pleadings before it.

¶ 35 Nonetheless, while a court has the authority to recharacterize pleadings before it, that does not mean this inherent power should be applied on a whim. See *People v. Holliday*, 369 Ill. App. 3d 678, 681 (2007) ("[T]rial courts should be hesitant to use this authority and do so only in 'unusual and compelling circumstances.' " (quoting *People v. Purnell*, 356 Ill. App. 3d 524, 529 (2005))). Beyond the postconviction context, we find support for the proposition that a court can recharacterize pleadings in other contexts.

¶ 36 In *People v. Delgado*, 126 Ill. App. 3d 239, 240 (1984), the defendant failed to appear for his sentencing and was sentenced *in absentia*. He was taken into custody over a year later and filed a " 'motion for a new trial' " and a " ' Motion to vacate judgment and correct errors of fact.' " *Id.* at 240-41. The trial court found it lacked jurisdiction to rule on the motions, but the appellate court remanded, finding that despite no cited statutory basis in the motions, they were motions pursuant to section 2-1401 and section 115-4.1(e) (Ill. Rev. Stat. 1981, ch. 38, ¶ 115-4.1; now 725 ILCS 5/115-4.1(e) (West 2022)). *Id.* at 241-44. The court found any confusion could be traced to defense counsel's ineptness and inadvertence, but fundamental fairness required that the defendant receive his day in court. *Id.* at 243.

¶ 37 In *People v. Johnson*, 2019 IL App (4th) 170622, the court confronted facts similar to those in *Delgado*. The court relied on *Delgado* and similarly found that because the relief sought was apparent on the motion's face and section 115-4.1(e) did not include any labeling requirements within a motion, the motion was properly characterized as one seeking relief pursuant to that

section. *Id.* ¶¶ 12-13. Moreover, fundamental fairness required affording the defendant an opportunity to be heard. *Id.* ¶ 16.

¶ 38 Here, it is clear that the trial court proceeded on the pleading filed by appointed posttrial counsel as a posttrial motion and not a postconviction petition. This is a reasonable conclusion, as the court would have been unable to render judgment on a postconviction petition at that juncture of the proceedings. Accord *People v. Larimer*, 409 Ill. App. 3d 827, 829 (2011) (noting that there must be "a conviction and final judgment" to bring a challenge under the Act); *People v. Smith*, 371 Ill. App. 3d 817, 821 (2007), *vacated*, 383 Ill. App. 3d 791 (2008) ("This case presents a situation where the trial court had to characterize defendant's motion just to obtain jurisdiction to address it."). The court held a hearing that was consistent with a section 116-1 (725 ILCS 5/116-1 (West 2022)) posttrial motion and not the three-stage process required under the Act. See *People v. Williams*, 2025 IL 129718, ¶ 42 (noting the Act provides "a three-stage process for adjudicating postconviction petitions"). The State did not move to dismiss the pleading based on its form, and the court below rendered a detailed judgment on the merits of the arguments presented. In its written order, the court stated that "[d]efendant's posttrial motions are denied." Defendant points to docket entries that depict the pleading as a postconviction petition; however, "[a] docket entry is subordinate to a judgment." *Bailey v. United States*, 566 Fed. Appx. 512, 514 (7th Cir. 2014) (citing *First National Bank of Sullivan v. Bernius*, 127 Ill. App. 3d 193, 196 (1984)).

¶ 39 Moreover, the statutory section governing motions for a new trial does not contain any labeling requirement and only requires a written motion requesting a new trial, filed within 30 days of a finding or verdict, with reasonable notice to the State, and with the grounds for a new trial adequately articulated. 725 ILCS 116-1(b), (c) (West 2022). While labeled a postconviction petition, the pleading at issue here met all of these requirements for a posttrial motion.

¶ 40    Additionally, the motion in question followed defendant's *pro se* attempts at his own posttrial motions and was labeled his "SECOND AMENDED PETITION FOR POST-CONVICTION RELIEF." Because there *was no* prior petition for postconviction relief, and further, because there *were* prior posttrial motions, it is sensible that the trial court would have construed counsel's motion as being a posttrial motion and not a postconviction petition.

¶ 41    In sum, the trial court had the ability to characterize the motion as a posttrial motion rather than a postconviction petition and clearly did so. Given that defendant received a hearing and judgment on the merits of the arguments presented posttrial, he has failed to establish that he was prejudiced by counsel's mislabeling of the motion.

¶ 42    Defendant also argues that even if the form of the pleading did not preclude consideration of the arguments presented by posttrial counsel, he was still prejudiced because counsel only included claims of a constitutional nature and waived the remainder. He believes that counsel was under the misimpression that constitutional claims were the only kind that could be presented. See *People v. Custer*, 2019 IL 123339, ¶ 37 ("[O]nly constitutional violations may be remedied under the Act."). We must also disagree with defendant on this point.

¶ 43    A review of the pleading shows that counsel included claims beyond those that are allowed in postconviction petitions. Specifically, counsel challenged the sufficiency of the evidence, which is well understood to not be a constitutional claim under the Act. See *People v. Dunn*, 52 Ill. 2d 400, 402 (1972) ("Questions as to the sufficiency of the evidence have been held not to present a constitutional question and therefore are not properly considered in post-conviction proceedings."). Furthermore, defendant's claim that counsel waived all of his *pro se* arguments is rebutted by the record, where counsel advanced several of defendant's *pro se* arguments, including insufficiency of the evidence, the State's failure to disprove his affirmative defense of self-defense,

a scrivener's error as to an affirmative defense prejudiced his preparation for trial, and denial of the use of certain character evidence against the victim. Counsel also declined to include defendant's as applied constitutional challenge—which is cognizable under the Act—but which here is merely a sufficiency of the evidence argument masquerading as an as applied challenge. See *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect.").

¶ 44          In defendant's reply brief, he persists in the argument that counsel only included the claims that could be "constitutionalized," believing he could bring no other type of claim. Even if this were true, it would only establish deficient performance, and defendant would still need to establish prejudice because counsel's representation did not amount to "no representation at all." (Internal quotation marks omitted.) *Cherry*, 2016 IL 118728, ¶ 29. Instead, defendant merely points to the waived arguments and asserts that because they were waived by counsel, this is sufficient to find ineffective assistance. This is incorrect, as defendant must establish that those waived arguments had a reasonable probability to change the outcome of the proceedings. *People v. Torres*, 2024 IL 129289, ¶ 27. Defendant makes no such argument.

¶ 45          Accordingly, we find that defendant was required to establish prejudice in order to succeed on his claims of ineffective assistance of counsel and has failed to do so where he received a hearing and judgment on the merits of his posttrial arguments. He has also failed to establish prejudice regarding the claims that were not advanced by counsel.

¶ 46                                B. Due Process

¶ 47          Next, we address defendant's argument that he was denied due process when the trial court struck his *pro se* posttrial pleadings following the initial hearing and judgment entered

on the pleadings of posttrial counsel. Defendant's argument under this heading is reliant on the previous argument, as he asserts that a posttrial motion was never heard and all the claims asserted below are procedurally barred.

¶ 48    However, as we have already explained, the argument that no posttrial motion was ever argued is without merit. Given our finding above, the trial court appropriately struck the *pro se* pleadings pursuant to *People v. James*, 362 Ill. App. 3d 1202, 1205 (2006).

¶ 49    In *James*, the appointed counsel had litigated a number of pretrial motions and conducted jury selection. The defendant continued to file *pro se* motions while represented by counsel, which the trial court refused to address. On the day of trial, the defendant asked that his *pro se* motions be heard. When counsel declined to advance the motions, defendant sought and was allowed to proceed *pro se*. *Id.* at 1203-05. The defendant then attempted to litigate his *pro se* motions. The court refused and proceeded to trial. *Id.* at 1205. The *James* court articulated that "[a] defendant has the right either to have counsel represent him or to represent himself," but he "does not have the right to both self-representation and the assistance of counsel." *Id.* The court approved of the trial court's ruling, reasoning that "to allow defendant to have his pretrial, *pro se* motions that addressed strategic matters under [appointed counsel's] control would constitute hybrid representation and essentially allow defendant to relitigate pretrial issues. *Id.* at 1206. Here, we are faced with a similar scenario as in *James*, but in the posttrial context rather than pretrial. Accordingly, we find *James* on point and adhere to its ruling.

¶ 50    Finally, we note that defendant requests, and the State agrees, that there should be a statement acknowledging that defendant did not file a postconviction petition so as to protect his right to do so at a later date. Because such a finding is in accord with our analysis in this case, we hold that the pleading titled "SECOND AMENDED PETITION FOR POST-CONVICTION

RELIEF" filed in this matter was in fact a posttrial motion and defendant has *not* filed a postconviction petition in this case.

¶ 51                                   III. CONCLUSION

¶ 52            While we affirm the judgment of the trial court, we recognize that there was a breakdown in the proceedings below. Defendant's counsel, the court, and the State all failed to explicitly note that the pleading before them *could not* be a postconviction petition. In fact, the only person who explicitly acknowledged the issue was defendant himself. This course of events falls well short of what we expect in our criminal justice system, but the fact remains that prejudice must be shown for the error to justify reversal. Because defendant has failed to demonstrate prejudice from this admitted breakdown, we must affirm.

¶ 53            For the reasons stated, we affirm the trial court's judgment.

¶ 54            Affirmed.